**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT MARGOLIS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> WARNER CHILCOTT (US) LLC, ALLERGAN PLC, <br><br> *Defendants*. | Civil Action No. 17-4550 (JMV) (JBC) <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case arises out of separation agreements signed by Plaintiffs Robert Margolis, Neil Podolnick, Kelly Hasson, and Alberto Hasson (collectively, "Plaintiffs") with their former employer, Defendant Warner Chilcott (US), LLC ("Warner Chilcott"). Allergan, PLC ("Allergan") is also named as a Defendant (collectively with Warner Chilcott, "Defendants"). Plaintiffs challenge the validity of the agreements' releases of potential claims under the Age Discrimination in Employment Act ("ADEA"). Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 27. The Court reviewed the submissions in support and in opposition,[1]

---

[1] Defendants' brief in support of their motion to dismiss the SAC will be referred to hereinafter as "Defs. Br." (D.E. 27); Plaintiffs' brief in opposition will be referred to hereinafter as "Pls. Opp. Br." (D.E. 30); Defendants' reply brief will be referred to hereinafter as "Defs. Reply." (D.E. 31).

and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

## I. FACTUAL BACKGROUND[2]

Warner Chilcott has a principal place of business in Rockaway, New Jersey, and is an indirect subsidiary of Warner Chilcott, PLC, a publicly traded Irish company. SAC at ¶ 3. In 2009, Warner Chilcott PLC acquired Proctor & Gamble Company's ("P&G") global branded pharmaceutical business. *Id.* at ¶ 4. In 2013, Actavis PLC acquired Warner Chilcott PLC. *Id.* at ¶ 5. Actavis later changed its name to Allergan, PLC, which has its United States administrative headquarters in Parsippany, New Jersey. *Id.* at ¶¶ 6, 7.

Plaintiffs were pharmaceutical sales representatives for P&G at the time of the acquisition by Warner Chilcott PLC. *Id.* at ¶ 9. Plaintiffs were employed by P&G until October 30, 2009, and then became employees of Warner Chilcott. *Id.* at ¶ 13. Before the acquisition, Margolis had worked for P&G for 25 years, Podolnick for 12 years, Kelly Hasson for 12 years, and Alberto Hasson for 15 years. *Id.* at ¶¶ 14-17. Soon after the closing, according to Plaintiffs, "Warner Chilcott PLC and its subsidiary Warner Chilcott embarked on an aggressive program to improperly 'thin the herd' of former P&G employees, whom they publically called 'cream puffs.'" *Id.* Plaintiffs claim this scheme included demands on Plaintiffs to use illegal sales practices, *id.* at ¶ 21, and a "kickback" system, *id.* at ¶ 22. Plaintiffs further allege that "[a]s part of the scheme, Defendant Warner Chilcott took calculated, systematic steps to replace the older, experienced sales representatives (including . . . Plaintiffs) acquired from P&G, by young, mostly female, sales

---

[2] The factual background is taken from the Second Amended Complaint, D.E. 21. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

representatives." *Id.* at ¶ 20. Plaintiffs claim that the scheme violated the ADEA but that they were not aware of the widespread scheme at the time. *Id.* at ¶ 19.

Plaintiffs were unwilling to accede to the demands of engaging in illegal practices. In response, they were told that they could "either accept a retirement package and sign a Separation Agreement containing a waiver of all their legal rights, or be fired on the spot." *Id.* at ¶ 26. Plaintiffs all signed separation agreements (the "Separation Agreement(s)") that were "essentially identical." *Id.* at ¶¶ 27-28. The Separation Agreements state, in relevant part, as follows:

> In consideration of the payment and benefits set forth in Section 5 below, Employee hereby unconditionally and irrevocably releases, waives, discharges and gives up, to the full extent permitted by law, any and all Claims (as defined below) that Employee may have against any of the Released Parties, arising on or prior to the date of Employee's execution and delivery of this Separation Agreement to Employer. "Claims" means any and all actions, charges, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for debts, sums of money, wages, salary, severance pay, expenses, commissions, fees, bonuses, unvested stock options, vacation pay, sick pay, fees and costs, attorneys' fees, losses, penalties, damages, including damages for pain and suffering and emotional harm, arising, directory or indirectly, out of any promise, agreement, offer letter, contract, understanding, common law, tort, the laws, statutes, and/or regulations of the States of New Jersey, Ohio, Florida, or any other state in the United States, including, but not limited to . . . the Age Discrimination in Employment Act ("ADEA") . . . whether arising directly or indirectly from any act or omission, whether intentional or unintentional.

D.E. 27, Ex. A ("Podolnick Separation Agreement").

Plaintiffs claim that they signed[3] the agreements under duress and protest. They further assert that the Separation Agreements stated that they had 45 days to consider whether to sign, but actually had to sign immediately to receive their settlement amounts. *Id.* at ¶¶ 27-28. The

---

[3] Plaintiffs do not specify on what date the Separation Agreements were signed. Podolnick's agreement is dated April 29, 2010. *See* Podolnick Separation Agreement at 7.

3

Separation Agreements waived any claims for discrimination, including under the ADEA, on threat of having to repay the settlement amount and paying Defendants' attorneys' fees in litigation. *Id.* at ¶ 29.

Plaintiffs claim that Margolis and Podolnick did not learn of the alleged age discrimination scheme "until late October or [e]arly November 2015," and that the Hassons "first learned of the scheme in July 2016." *Id.* at ¶¶ 34, 36. Plaintiffs do not explain why the discovery dates for Margolis and Podolnick, on the one hand, and the Hassons, on the other, differ. Once Plaintiffs learned about the "scheme," they filed EEOC charges. *Id.* at ¶ 36.[4]

## II. PROCEDURAL HISTORY

On September 12, 2016, Plaintiffs filed a Complaint in the Southern District of Florida. D.E. 1. On September 30, 2016, Plaintiffs filed an Amended Complaint and then, on December 22, 2016, a Second Amended Complaint ("SAC"). D.E. 4, 21. Plaintiffs seek a declaratory judgment that the waivers of their ADEA rights under each of their Separation Agreements are invalid and unenforceable and that each Plaintiff retains all ADEA rights. D.E. 21 at ¶ 39.

Defendants filed a motion to dismiss Plaintiffs' SAC on January 23, 2017. D.E. 27. Plaintiffs filed opposition, D.E. 30, to which Defendants replied, D.E. 31. The case was subsequently transferred to this District on June 14, 2017, D.E. 37, and assigned to this Court on June 21, 2017.

---

[4] The exact dates on which Plaintiffs' EEOC charges were filed is not stated in the pleading. However, each of the charges were attached by Defendants to their motion to dismiss. *See* D.E. 27, Ex. B-E. Margolis signed his charge on June 29, 2016; Podolnick signed on July 15, 2016; Kelly Hasson signed on November 9, 2016; and Alberto Hasson signed on November 10, 2016. *Id.*

4

## III. LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV. ANALYSIS

Defendants contend that Plaintiff's SAC must be dismissed because (1) Plaintiffs' underlying ADEA claims are time-barred,[5] (2) Plaintiffs do not have cognizable underlying ADEA

---

[5] Defendants argue that Plaintiff's SAC does not plausibly plead an ADEA violation. Plaintiffs respond that the SAC does not actually assert underlying ADEA claims, but instead only seeks to

5

claims because their allegations of age discrimination are implausible, and (3) Plaintiffs cannot invalidate the Separation Agreement releases based on fraud, duress, or lack of knowledge.

### a. Statute of Limitations

The ADEA provides, in part:

> (d) Filing of charge with Commission; timeliness; conciliation, conference, and persuasion; unlawful practice
>
> > (1) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

---

invalidate the provision in their Separation Agreements regarding a waiver of their ADEA claims. Plaintiffs further indicate as follows:

> While [Plaintiffs] demand at this point only a declaration of the invalidity of the ADEA rights waiver, Plaintiff[s] obviously intend to assert a more detailed ADEA action once it has been determined that their ADEA rights waiver was ineffective. The Separation Agreement they were forced to sign and the waiver of rights exposes them to drastic liability for requesting any legal relief beyond striking of their ADEA rights waiver. . . . That said, Plaintiffs' Second Amended Complaint makes it clear that Plaintiffs intend to assert a more fully formed ADEA challenge once their ADEA rights waver [sic] has been determined to be ineffective . . . but even as the Second Amended Complaint currently stands, it contains a short and plain statement of a claim showing that the pleader is entitled to relief, and gives Defendants fair notice of what the claim is and the grounds upon which it rests.

Pls. Opp. at 5-6.

The Court notes that Plaintiffs make clear in their SAC that their underlying ADEA claims rest on a "scheme" that "took calculated, systematic steps to replace the older, experienced sales representatives (including . . . Plaintiffs) acquired from P&G, by young, mostly female, sales representatives" in violation of the ADEA. SAC at ¶ 19-20, 25. In any event, the Court addresses whether the statute of limitations has run on Plaintiffs' ADEA claims because if the claims are time barred, then Plaintiffs' request to invalidate the ADEA waiver provision in the Separation Agreements is moot.

6

> (A) *within 180 days* after the alleged unlawful practice occurred; or
>
> (B) in a case to which section 633(b) of this title applies, *within 300 days* after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d)(1)(A)-(B) (emphases added). In sum, the ADEA provides at most 300 days for a claimant to file an age discrimination charge after an unlawful practice. Here, Plaintiffs were presented with the Separation Agreements in the beginning of 2010. SAC at ¶ 33. Margolis and Podolnick filed EEOC charges on June 29 and July 15, 2015, respectively, and the Hassons filed their charges on November 9 and 10, 2016. SAC at ¶¶ 34, 36; D.E. 27-1, Ex. B-E. Their filings were well past the statute of limitations under the ADEA.[6]

Plaintiffs first argue that they "filed their EEOC charges well within 300 days of becoming aware of the facts underlying their claims" and that the discovery rule should apply. Pls. Opp. at 9-12. Traditionally, courts have held that "[a]s a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues . . . [T]he accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 590 (3d Cir. 2005) (emphasis in

---

[6] The parties both assume that Plaintiffs had 300 days to file their charges without any analysis. *See* Defs. Br. at 13 ("The Hassons did not file EEOC charges until November 9 and 10, 2016 – after over 300 days had passed from November 2015."); Pls. Opp. at 9 ("Plaintiffs filed their EEOC charges well within 300 days of becoming aware of the facts underlying their claims."). The Court accepts the parties' assumption for purposes of this Opinion.

7

original) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir. 1994)). However, the discovery rule traditionally has limits:

> [T]he accrual date is [not] when a plaintiff learns he has been the victim of a *legal wrong*. Rather, a claim accrues as soon as a potential plaintiff either is aware, *or should be aware after a sufficient degree of diligence*, of the existence and source of an *actual injury*.

*Podobnik*, 409 F.3d at 590 (emphases added) (citing *Keystone Insurance Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988)); *see also Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 214 (3d Cir. 2008) ("Because a potential plaintiff cannot discover his injury before it has occurred, the discovery rule only postpones the accrual date of a claim where the [plaintiff] is unaware of the injury." (internal quotation omitted)). Thus, even under the discovery rule, the critical event is awareness of an actual injury even if a potential plaintiff is not yet aware that he has suffered a legal wrong.

"The discovery rule delays the initial running of the statute of limitations, but only until the plaintiff has discovered: (1) that he or she has been injured; and (2) that this injury has been caused by another party's conduct." *Podobnik*, 409 F.3d at 590 (citing *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124 (3d Cir.1997)). A court must accordingly focus on when Plaintiffs "suffer[ed] an actual injury," *Podobnik*, 409 F.3d at 590, and whether they were aware of their injuries at the time. *See Disabled in Action of Pennsylvania*, 539 F.3d at 214 ("[T]he first step in applying the discovery rule in a situation like the present is to establish when the injurious discriminatory act defined by the statute actually occurred. The second step is to determine whether that injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable to expect the plaintiff to discover the injury." (citations omitted)).

In *Podobnik*, the Third Circuit applied the discovery rule to claims under the ADEA. In that case, a United States Postal Service delivery driver brought ADEA claims alleging that his 1993 route reduction and 1998 forced retirement from the Postal Service were based on impermissible age discrimination. 409 F.3d at 590. The plaintiff had knowledge that his route was being reduced in 1993 and knowledge that USPS intended to terminate him in 1998. *Id.* at 591-92. The plaintiff argued, however, that he did not know that USPS took these actions because of his age until 2000. *Id.* at 590. The *Podobnik* court held that the claims accrued in 1993 and 1998, the date of the plaintiff's actual injuries, rather than when he found out the Postal Service's intent in 2000. *Id.* at 591. The Third Circuit explained its reasoning as follows:

> Were we to extend the reach of the discovery rule to delay accrual until a plaintiff learned that a *legal* injury had occurred, as Appellant requests, a statute of limitations would become effectively meaningless, as a plaintiff could, through ignorance or fraud, bring an age discrimination claim at any point in his lifetime, regardless of how long ago the underlying acts had occurred. We decline this invitation, and conclude that the discovery rule does not save Appellant's untimely ADEA claim [because Plaintiff had knowledge of his *actual* injury].

*Id.* (emphases added).

However, the Third Circuit recently cast doubt on whether the discovery rule remains applicable to ADEA claims. In *Rotkiske v. Klemm*, No. 16-1668, 2018 WL 2209120, __ F.3d __ (3d Cir. May 15, 2018), the court grappled with whether the accrual of a cause of action under the Fair Debt Collection Practices Act (FDCPA) was subject to the "occurrence rule" or the "discovery rule." The Third Circuit explained that the occurrence rule started the statute of limitation from "'the date the injury actually occurred'" while the discovery rule begins the limitation period from "'the date the aggrieved party knew or should have known of the injury[.]'" *Id.* at *2 (quoting *G.L. v. Liognier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015)). The *Rotkiske* court

9

concluded that the FDCPA applied the occurrence rule for several reasons, including the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001) and the clear statutory text. The *Rotkiske* court also appeared to indicate in dicta that the discovery rule no longer applies to ADEA claims in light of the ADEA's statutory language. *Rotkiske*, 2018 WL 2209120, at *4 (citing *Podobnik*, 409 F.3d at 590).

In this case, even if the Court applied the discovery rule, as opposed to the occurrence rule, the outcome would be the same. Accordingly, even if the discovery rule survived *Rotkiske*, which the Court doubts, Plaintiffs' actual injuries occurred in 2010 when Plaintiffs were told that they could "either accept a retirement package and sign a Separation Agreement containing a waiver of all their legal rights, or be fired on the spot." SAC at ¶ 26.[7] Plaintiffs did not file their EEOC charges until 2015 and 2016, well after either the 180 or 300-day periods. Therefore, it is clear that even if the discovery rule still applied to ADEA claims, it would not save Plaintiffs' claims from being brought outside the statute of limitations. Accordingly, Plaintiffs' claims are time-barred unless equitable tolling applies.

### b. Equitable Tolling

Plaintiffs argue in their Opposition that even if their underlying ADEA claims are time-barred, their claims should be subject to the doctrine of equitable tolling. A party must plausibly plead allegations to support equitable tolling and "a district court may dismiss an untimely cause of action if it is plain on the face of the complaint that the limitations period cannot be tolled." *Menichino v. Citibank, N.A.*, No. 12-0058, 2013 WL 3802451, at *6 (W.D. Pa. July 19, 2013) (stating that "[i]t is not asking too much to require the Plaintiffs to play their factual cards face-up,

---

[7] The Court also notes that based on the allegations in the SAC, it appears that the accrual date under either the discovery or occurrence rule would be the same or, at a minimum, very near in time.

now, in seeking to invoke the extraordinary safety valve of tolling to rescue claims that even they concede are otherwise untimely") (citing cases); *see also Lomako v. New York Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011) (upholding dismissal of claims (including ADEA claims), in part because the plaintiff's complaint failed to include any factual allegations that supported equitable tolling); *Cunningham v. M & T Bank Corp.*, No. 12-1238, 2013 WL 5876337, at *6 (M.D. Pa. Oct. 30, 2013) (denying a motion to dismiss because plaintiffs had plausibly pled the elements of equitable tolling under RESPA). Because plaintiffs bear the burden of showing that their untimely claims are subject to equitable tolling, plaintiffs "must plead the applicability of the doctrine." *Menichino*, 2013 WL 3802451, at *7 (quotation omitted). In fact, "a plaintiff's tolling claim is subject to the *Twombly/Iqbal* standard of review" and therefore "the face of the complaint must set forth sufficient factual matter to allow the court to draw the reasonable inference that discovery will show that the plaintiff's untimely claim is entitled to tolling." *Id.* (internal quotations and citations omitted). Here the Court finds that Plaintiffs have not put forth plausible allegations to support their claim of equitable tolling.[8]

"The ADEA's timely exhaustion requirement is a non-jurisdictional prerequisite that, like a statute of limitations, is subject to equitable tolling." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007) (citing *Commc'ns Workers of Am. v. N.J. Dept. of Pers.*, 282 F.3d 213, 216–17 (3d Cir. 2002)). "Equitable tolling stops the statute of limitations from running when an EEOC

---

[8] The Third Circuit has cautioned that equitable tolling determinations are generally fact-intensive endeavors. *See In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 301–02 (3d Cir. 2010), as amended (Oct. 20, 2010) ("Indeed, our Court (and our sister circuit courts) have reasoned that, because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."). For that reason, as explained below, if Plaintiffs amend their pleadings to include plausible allegations that support the application of equitable tolling, the parties will be permitted to engage in discovery on the issue.

11

charge's accrual date has already passed." *Ruehl*, 500 F.3d at 384 (citing *Oshiver*, 38 F.3d at 1387). However, both the Supreme Court and Third Circuit have "recognized that the doctrine [of equitable tolling] should be applied 'only sparingly.'" *Winder v. Postmaster Gen. of U.S.*, 528 F. App'x 253, 256 (3d Cir. 2013) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Plaintiffs bear the burden of proving that the equitable tolling doctrine applies. *See Hammer v. Cardio Med. Prod., Inc.*, 131 F. App'x 829, 831 (3d Cir. 2005).

> Equitable tolling is generally appropriate in three situations:
>
>> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision;
>> (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or
>> (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Podobnik*, 409 F.3d at 591 (citing *Oshiver*, 38 F.3d at 1387). In this case, Plaintiffs proceed on the first two grounds – but focus on the first.[9] There are two requirements for equitable tolling in such a scenario:

> [T]he equitable tolling doctrine may excuse the plaintiff's non-compliance with the statutory limitations provision at issue when it appears that (1) the defendant actively misled the plaintiff respecting the reason for the plaintiff's discharge, and (2) this deception caused the plaintiff's non-compliance with the limitations provision.

*Ruehl*, 500 F.3d at 384 (citing *Oshiver*, 38 F.3d 1380, 1387); *see also Winder*, 528 F. App'x at 256. Additionally, "equitable tolling requires the plaintiff to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on his or her claim." *Ruehl*, 500 F.3d at 384 (quoting *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir.

---

[9] Plaintiffs mainly focus on their allegation that Defendants "actively misled" Plaintiffs. Plaintiffs also assert the second exception, addressing "extraordinary" circumstances, but fail to support this conclusory allegation.

2004)). The duty to exercise reasonably diligence is a continuing one. *See Podobnik*, 409 F.3d at 592.

In their Opposition, Plaintiffs claim that equitable tolling applies because Defendants actively misled them. Specifically, Plaintiffs claim that equitable tolling is appropriate because "Defendants have prevented Plaintiffs in an extraordinary way from asserting their rights until 2015/2016." Pls. Opp. at 14; *see* SAC at ¶¶ 34, 36. Defendants respond that, based on Plaintiffs' allegations, Plaintiffs knew the following:

> "Warner Chilcott ordered them to break the law, . . . Plaintiffs knew that what they were being ordered to do was unlawful, . . . Warner Chilcott sought to fire them as a result of their refusal to effectuate the illegal practices, . . . Warner Chilcott strong-armed them into surrendering all their rights, . . . and Plaintiffs knew that there was a problem with that, and protested."

Defs. Br. at 9 (citations to SAC omitted). Defendants also assert that Plaintiffs' SAC further alleges that Warner Chilcott was violating the ADEA because Plaintiffs were not given 45 days to consider the Separation Agreements. Defs. Br. at 10. Defendants say that these allegations in the SAC show that Plaintiffs should have known, through the exercise of reasonable diligence, that they had potential ADEA claims in 2010.

First, Plaintiffs may not amend their pleadings with their Opposition brief. *Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiffs' SAC is devoid of any sufficient factual allegations to support equitable tolling. But even considering Plaintiffs' Opposition, the Court finds that Plaintiffs fail to articulate adequate reasons why equitable tolling applies beyond their conclusory statement that they did not know about Defendants' scheme until

13

2015 or 2016.[10] Plaintiffs also fail to plausibly plead any diligence that they undertook. To the contrary, Plaintiffs should have known, through the exercise of reasonable diligence, about Defendants' violation of ADEA's 45-day review period for Separation Agreements. The Separation Agreements indicated that Plaintiffs had been provided with the necessary time, and Plaintiffs knew that they had not. Even if Plaintiffs felt compelled to sign the agreements immediately, nothing prevented Plaintiffs from seeking an after-the-fact legal review. Such review, by competent counsel, would have quickly revealed the 45-day requirement violation. Plaintiffs' underlying ADEA claims, however, are not based on a violation of the 45-day window. Instead, the ADEA violations are premised on Defendants' alleged scheme to replace Plaintiffs based on their age, and Plaintiffs argue that the relevant facts were not known to them in 2010. SAC ¶ 30. More specifically, Plaintiffs allege that "Warner Chilcott and its agents knew that by actively concealing from Plaintiffs Warner Chilcott's scheme of replacing older, experienced employees with younger, mostly female employees, they would induce Plaintiffs to waive their ADEA rights." SAC at ¶ 32. However, Plaintiffs have provided insufficient information in their SAC or Opposition to support a reasonable inference that Defendants actively misled them.

Also, of note, Plaintiffs do not explain why the Hassons learned of the Defendants' scheme in July 2016, while Margolis and Podolnick learned of the scheme in October or November 2015. Plaintiffs provide no factual basis in their pleadings or in their opposition for this disparity.[11]

---

[10] The Court also has doubts about Plaintiffs' argument that Defendants' failure to disclose the discrimination scheme is equivalent to "actively misleading" Plaintiffs. If this were true, then the exception would likely swallow the discovery rule, to the extent the rule still exists in ADEA claims.

[11] Defendants also argue that at the latest, Plaintiffs should have known of their potential ADEA claims by August 2013. Defs. Br. at 11. In support, Defendants point to a *qui tam* case brought against Warner Chilcott in the District of Massachusetts. Defs. Br. at 11-12 (citing the "Second Amended Complaint & Jury Demand" in *United States v. Warner Chilcott*, No 11-10545 (D. Mass.

14

In sum, the Court finds that Plaintiffs fail to plausibly plead that the equitable tolling doctrine applies to their ADEA claims. However, the Court will allow Plaintiffs to amend their pleadings. Accordingly, the Court grants Defendants' motion to dismiss and provides Plaintiffs the opportunity to submit a Third Amended Complaint that plausibly pleads equitable tolling.

---

April 22, 2013)). Defendants do not attach the Second Amended Complaint, and Plaintiffs attach a Third Amended Complaint. *See* D.E. 30, Ex. C. ("*Qui Tam* Third Amended Complaint"). The *Qui Tam* Third Amended Complaint, submitted to the District of Massachusetts on August 22, 2013, which does not appear to have been filed under seal, included the following allegation:

> Warner Chilcott has employed a distinctive hiring bias. It has hired, almost exclusively, women in their early- to mid-20s without any prior pharmaceutical sales experience. During a Plan of Action ("POA") meeting in July of 2010, which included representatives from Michigan, Wisconsin, Illinois, and Minnesota, almost every one of the 25 to 30 newly hired sales representatives fit this characterization. . . . None of the new hires to the Primary Sales Force was male, and none appeared to be over the age of 30.

*Qui Tam* Third Amended Complaint. Defendants string cite to a number of cases in a footnote for the proposition that "equitable tolling is improper when the information that would indicate that a plaintiff has a claim is publicly available." Defs. Br. at 11. However, Defendants do not sufficiently analyze how the Second or Third Amended Complaints in the District of Massachusetts is related to this case, do not analyze the cited cases, and fail to cite to any cases that consider claims under the ADEA. The Court could not find any opinions analyzing equitable tolling in ADEA cases based on a defendant being sued in another district or state for the same or similar claims. In addition, Defendants do not provide any evidence demonstrating that there was media coverage of the *Qui Tam* Third Amended Complaint. While the Court may take judicial notice of the filing, the parties provide minimal analysis of its relevance to this case. The parties may address this issue in future briefing if necessary.

## V. CONCLUSION

Defendants' motion to dismiss (D.E. 27) Plaintiffs' SAC is **GRANTED**. The SAC is dismissed without prejudice to allow Plaintiffs an opportunity to file a Third Amended Complaint. Plaintiffs have thirty (30) days to file a Third Amended Complaint, if they so choose, consistent with this Opinion. If Plaintiffs fail to file a Third Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: May 31, 2018

John Michael Vazquez, U.S.D.J.